1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

MARITA IVORY,

11

Plaintiff,

12

v.

13

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

14

Defendant.

15

CASE NO. 2:15-CV-00034-BJR-DWC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

Noting Date: August 14, 2015

16

17

18

19

20

21

22

23

24

The District Court has referred this action, filed pursuant to 42 U.S.C § 405(g), to United

States Magistrate Judge David W. Christel. Plaintiff seeks judicial review of the Defendant's

denial of the Plaintiff's application for Social Security Child Disability Benefits and

Supplemental Security Income Benefits.

The Court concludes the ALJ erred in: (1) evaluating Plaintiff's credibility concerning the

severity, persistence, and effect of her symptoms; and (2) improperly rejecting the opinions of

examining psychologists Dr. Bass. Therefore, the undersigned recommends the entry of an Order

REVERSING and REMANDING the ALJ's decision pursuant to sentence four of 42 U.S.C. §

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

1  405(g) to the Acting Commissioner for further proceedings consistent with this report and

2  recommendation.

3  **PROCEDURAL & FACTUAL HISTORY**

4  On August 24, 2010, Plaintiff filed an application for Child Disability Benefits and

5  Supplemental Security Income Benefits ("SSI"). *See* Dkt. 9, Administrative Record ("AR") 174-

6  83. Plaintiff alleges she became disabled on April 25, 2000, due to Attention

7  Deficit/Hyperactivity Disorder ("ADHD"), Bipolar Disorder, and Schizophrenia. *See* AR 65.

8  Plaintiff's application was denied upon initial administrative review on November 18, 2010, and

9  on reconsideration on May 5, 2011. *See* AR 59-78. A hearing was held before an administrative

10  law judge ("ALJ") on August 21, 2013, at which Plaintiff, represented by counsel, appeared and

11  testified. *See* AR 41.

12  On September 13, 2013, the ALJ issued his decision, finding Plaintiff was not disabled

13  within the meaning of Sections 223(d) and 1614(a)(3)(A) of the Social Security Act. AR 19, 22.

14  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on

15  December 10, 2014, making that decision the final decision of the Commissioner of Social

16  Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On January 12,

17  2015, Plaintiff filed a Complaint seeking judicial review of the Commissioner's final decision.

18  Dkt. 3.

19  Plaintiff argues the denial of benefits should be reversed and remanded for further

20  proceedings, because the ALJ: (1) improperly rejected the opinions of examining psychologists

21  Dr. Bass, Dr. Barnett, and Dr. Johnson; (2) failed to provide clear and convincing reasons for

22  rejecting the Plaintiff's testimony; (3) failed to make an adequate residual functional capacity

23

24

1  finding; and (4) failed to meet his burden at Step Five of the sequential evaluation to demonstrate

2  there were other jobs the Plaintiff could perform. Dkt. 11, pp. 1-2.

3                                          **STANDARD OF REVIEW**

4          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

5  social security benefits only if the ALJ's findings are based on legal error or not supported by

6  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

7  Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

8  more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

10  750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

11                                              **DISCUSSION**

12      **I.      Whether the ALJ provided clear and convincing reasons, supported by
              substantial evidence, for rejecting the Plaintiff's testimony concerning her**
13              **subjective complaints of symptoms.**

14          Plaintiff argues the ALJ failed to provide specific, clear and convincing reasons,

15  supported by substantial evidence, for discrediting the Plaintiff's testimony concerning her

16  symptoms and functional limitations. If an ALJ finds a claimant has a medically determinable

17  impairment that reasonably could be expected to cause the claimant's symptoms, and there is no

18  evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific,

19  clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing

20  Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). *See also Reddick v. Chater*, 157 F.3d 715,

21  722 (9th Cir. 1998)).

22          The ALJ may not discredit a claimant's testimony as to the severity of symptoms based

23  solely on a lack of objective medical evidence corroborating the alleged severity.  20 C.F.R. §§

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 3

1   404.1529, 416.929; *Smolen*, 80 F.3d at 1281-82 (*citing Cotton v. Bowen*, 799 F.2d 1407-08 (9th

2   Cir. 1986)), *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*). The ALJ

3   may consider "ordinary techniques of credibility evaluation," including the claimant's reputation

4   for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a

5   claimant's daily activities, and "unexplained or inadequately explained failure[s] to seek

6   treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

7         At the hearing, Plaintiff testified to irritability, interpersonal conflict, depression, mood

8   swings, delusions, and auditory and visual hallucinations. AR 44-46, 49-52. Consistent with this

9   testimony, the medical records reflect variations in her mood, judgment, affect, memory, and

10  cognition. *See, e.g.*, AR 242-44, 251, 270, 278, 290, 313, 318-19. The medical records also

11  reflect Plaintiff was involuntarily hospitalized on two separate occasions in 2012, due to auditory

12  and visual hallucinations, delusions, paranoia, and a possible threat of suicide. AR 332-36, 338-

13  49. The records reflect the severe symptoms exhibited during the recent hospitalizations were

14  precipitated by the replacement of Plaintiff's usual medication, Abilify, with an alternative

15  medication after changes to Plaintiffs' insurance. AR 45, 326-27, 341. Even when taking an

16  effective medication, the Plaintiff testified her symptoms never fully resolve; she continues to

17  experience mood swings, continues to hear "blurry" voices, and is unable to tell whether these

18  voices are real or hallucinations. AR 53-56. Plaintiff testified these symptoms intensify

19  depending upon how long it has been since she last took her medication. AR 51.

20        The ALJ found Plaintiff's medically determinable impairments could reasonably be

21  expected to cause some of these symptoms, but also found Plaintiff's statements concerning the

22  intensity, persistence and limiting effects of her symptoms were not entirely credible. AR 26. In

23  support, the ALJ cited purported inconsistencies between the Plaintiff's allegations and: (1)

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 4

1   treatment records and notes pertaining to the effectiveness of her medication; (2) Plaintiff's

2   activities of daily living; and (3) insufficient clinical evidence. AR 26-28.

3   **A.  Inconsistencies with treatment records and treatment notes.**

4   The ALJ cited alleged inconsistencies between the medical evidence and Plaintiff's

5   testimony concerning the severity and degree of her limitations. An ALJ may discredit a

6   plaintiff's testimony when it contradicts evidence in the medical record. *See Johnson v. Shalala,*

7   60 F.3d 1428, 1434 (9th Cir. 1995). However, when a claimant presents mental health issues, "it

8   is error to reject [their] testimony merely because symptoms wax and wane in the course of

9   treatment." *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Instead, to satisfy the

10  clear and convincing standard, an ALJ must explain how specific examples of improvement "*in*

11  *fact* constitute examples of a broader development" in a claimant's mental health treatment. *Id.* at

12  1018 (emphasis in original).

13  *1.     Treatment records stating the plaintiff was "doing well" on medication.*

14  After her involuntary hospitalizations in September, 2012, Plaintiff was seen in October,

15  2012 and July, 2013 by Eileen Petralia, ARNP, for follow-up and prescription refills. AR 326,

16  329. In October, 2012, Nurse Petralia made treatment notes indicating Plaintiff "appears to be

17  doing well" on Abilify, and in July, 2013, again noted the Plaintiff was "currently on Abilify and

18  doing better." AR 326, 329. Nurse Petralia's records also reflect Plaintiff denied hallucinations,

19  and did not exhibit paranoia, pressured speech, flight of ideas or increased activity during their

20  meetings. AR 328, 331.

21  The ALJ relied upon Nurse Petralia's notes indicating the Plaintiff was "doing well" on

22  Abilify for the proposition that Plaintiff's symptoms were well-controlled with medication. AR

23  27-28. However,

24

1    reports of improvement in the context of mental health issues must be interpreted
     with an understanding of the patient's overall well-being and the nature of her
2    symptoms. . . . They must also be interpreted with an awareness that improved
     functioning while being treated and while limiting environmental stressors does
3    not always mean that a claimant can function effectively in a workplace.

4  *Garrison*, 759 F.3d at 1017 (internal citations omitted). *See also Punzio v. Astrue*, 630 F.3d 704,

5  710 (9th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and

6  worse days, so a snapshot of any single moment says little about her overall condition."),

7  *Delegans v. Colvin*, 584 Fed.Appx. 328, 330-31 (9th Cir. 2014), *Hutsell v. Massanari*, 259 F.3d

8  707, 712 (8th Cir. 2001). Importantly, statements in medical records indicating a claimant is

9  "doing well" in mental health treatment are not, by themselves, substantial evidence, as "doing

10 well for the purposes of a treatment program has no necessary relation to a claimant's ability to

11 work or to her work-related functional capacity." *Hutsell,* 259 F.3d at 712-13 (holding

12 statements in medical records indicating claimant was "doing well" were belied by the fact the

13 claimant's physician had not discharged the claimant from treatment, and other doctors had

14 concluded the claimant's work skills were deficient). Nurse Petralia's indications that the

15 Plaintiff was doing well on Abilify were in made only in reference to Plaintiff's recent

16 hospitalizations. *See* AR 326 (instructing Plaintiff to "come see [Nurse Petralia] in one month to

17 make sure you aren't losing it.").

18      The Plaintiff testified to ongoing symptoms of irritability, depression, mood swings,

19 delusions, and auditory and visual hallucinations. AR 44-46, 49-52. Consistent with this

20 testimony, the medical records reflect ongoing variations in her mood, judgment, affect,

21 memory, and cognition. *See, e.g.*, AR 242-44, 251, 270, 278, 290, 313, 318-19. The medical

22 records also reflect Plaintiff has been involuntarily hospitalized for these conditions at least four

23

24

1 times, including two separate occasions in 2012. [1] AR 239-275, 332-36, 338-49. Even when on

2 an effective medication, the Plaintiff testified her symptoms never fully resolve; she continues to

3 experience mood swings, continues to hear "blurry" voices, and is unable to tell whether these

4 voices are real or hallucinations. AR 53-56. In light of these longitudinal mental health issues,

5 Plaintiff's testimony, Nurse Petralia's two notes indicating Plaintiff was experiencing some

6 improvements on medication do not rise to the level of clear and convincing reasons for

7 discrediting Plaintiff. *See Garrison*, 759 F.3d at 1018, *Delegans*, 584 Fed.Appx. at 331, *Hutsell*,

8 259 F.3d at 713 ("'doing well' as a chronic schizophrenic is not inconsistent with a finding of

9 disability.").

10                     2.       *Plaintiff's failure to take medication.*

11        The Commissioner argues the ALJ properly discredited the Plaintiff for failing to take her

12 medication, as "stopping an effective medication due to mild side effects but not seeking an

13 alternative or more tailored treatment program permits inference that pain was not as all-

14 disabling as [Plaintiff] reported[.]" Dkt. 15, p. 4 (*quoting Tommassetti v. Astrue*, 533 F.3d 1035,

15 1039 (9th Cir. 2008). The Commissioner also contends there was no good reason for Plaintiff to

16 stop her medication. Dkt. 15, p. 4 (citing *Tommassetti*, 533 F.3d at 1039). However, the record

17 indicates Plaintiff prescription for Abilify was changed to Zoloft as a result of a coverage issue

18 with her health insurance. *See* AR 45. Also, the record reflects instances where Plaintiff refused

19 treatment or medication due to her ongoing psychoses. AR 339 (noting Plaintiff believed her

20 mind was "being controlled by God," and she refused to take her prescribed Zoloft because "its

21 not good for my body or mind. It's messing up my liver."). These are good reasons for Plaintiff

22

23 [1] In addition to the two treatment notes cited by the ALJ, Nurse Petralia also saw the Plaintiff on the day before her September 2012 psychiatric hospitalization. AR 323-24, 338. At that time, she indicated Plaintiff did not exhibit any

24 "unusual anxiety or evidence of depression." AR 323-24, 338.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 7

1   not taking her medication consistently, especially in light of the fact Plaintiff's mental health

2   conditions appear to have contributed to the discontinuation of her treatment. *See Nguyen v.*

3   *Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). As a result, Plaintiff's alleged failure to seek

4   treatment does not constitute a clear and convincing reason for discrediting her subjective

5   symptoms, and the ALJ erred in relying upon that lack of treatment in the credibility analysis.

6       **B.  Inconsistencies with Plaintiff's activities of daily living.**

7       An ALJ may rely upon a claimant's daily activities to discredit a claimant's testimony in

8   two circumstances: if the claimant's activities contradict his or her other testimony, or if the

9   activities "meet the threshold for transferable work skills." *See Orn v. Astrue*, 495 F.3d 625, 639

10  (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). However, the

11  mere fact a claimant has engaged in daily activities is insufficient evidence, standing alone, to

12  allow an ALJ to conclude those activities are inconsistent with the claimant's subjective

13  symptoms. *Id.* The ALJ "must make 'specific findings relating to the daily activities' and their

14  transferability or inconsistency to conclude a claimant's daily activities warrant an adverse

15  credibility determination." *Orn*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681

16  (9th Cir. 2005)).

17      Plaintiff's testimony about "mood swings" was the only impairment the ALJ identified as

18  being inconsistent with Plaintiff's activities of daily living. The ALJ discounted the Plaintiff's

19  complaints of severe mood swings by reference to several activities reported in the record.

20  Specifically, the ALJ made these findings:

21          [D]espite testimony of recurring mood swings, the claimant has been able to do
            activities requiring some degree of cognitive and social ability. At the hearing, the
22          claimant testified that she uses public transportation. Also, the claimant reported
            that she had become actively involved in her church. She indicated that she
23          attended church daily. Further, the claimant reported that she was able to attend

24

1          basic self-care, including personal hygiene. The claimant also reported that she
           was able to cook and do household chores.
2

3    AR 28 (internal citations omitted). The Commissioner concedes these activities are not evidence

4    of transferable work skills, but argues these activities are inconsistent with Plaintiff's stated

5    limitations precipitated by her mood swings. Dkt. 16, pp. 5-6. The record does not reflect

6    Plaintiff denied an ability to perform tasks such as cooking or other household chores. Instead,

7    the Plaintiff reported she attempted chores such as cooking when she was not homeless, but her

8    attempts were not usually successful. *See* AR 54-55 (discussing her household chores and her

9    poor cooking while in a group home). *See also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir.

10   2014) ("claimant did not testify that she *never* could vacuum; she stated that vacuuming was

11   difficult for her '*at this point*'") (emphasis in original). The Ninth Circuit "has repeatedly

12   asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery

13   shopping, driving a car, or limited walking for exercise, does not in any way detract from her

14   credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to

15   be disabled." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen,*

16   885 F.2d 597, 603 (9th Cir.1989)).

17          The ALJ's decision does not show how the activities of daily living are inconsistent with

18   "mood swings."  *See Burrell*, 775 F.3d at 1138, *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th

19   Cir. 2002). Plaintiff's schizoaffective bipolar disorder is a disorder which presents episodically;

20   the mere fact Plaintiff has occasionally engaged in certain activities (such as using public

21   transportation on one occasion) is not inconsistent with a disorder characterized by constantly

22   changing motivation levels, energy levels, and moods. *See Kangali v. Barnhart*, 454 F.3d 627,

23   628 (7th Cir. 2011) ("The ALJ thought the medical witnesses had contradicted themselves when

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 9

1   they said the Plaintiff's mental illness was severe yet observed that she was behaving pretty

2   normally during her office visits. There was no contradiction; bipolar disorder is episodic.").

3          Absent some explanation of which impairments actually contradict Plaintiff's activities,

4   "the mere fact that [Plaintiff] has carried on certain daily activities . . . does not in any way

5   detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (9th Cir. 2007)

6   (*quoting Vertigan*, 260 F.3d at 1050). *See also Burrell*, 775 F.3d at 1138 (requiring the ALJ to

7   identify which impairments are contradicted by which activities of daily living). Thus, the ALJ

8   erred by relying on Plaintiff's activities of daily living as a basis to discredit her subjective

9   symptom testimony.

10         **C.  Inconsistencies with objective medical evidence.**

11         Finally, the ALJ supported his credibility analysis by referencing the lack of clinical

12   evidence in the record indicating "all work activity would be precluded." AR 26-27. Once a

13   claimant has provided evidence demonstrating an impairment, an ALJ may not discredit a

14   claimant's testimony solely on the grounds it is not supported by objective medical/clinical

15   evidence. *Bunnell*, 947 F.2d at 343, 346-47 (*citing Cotton*, 799 F.2d at 1407); *Rollins v.*

16   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

17         As discussed above, the ALJ's other reasons for discrediting the Plaintiff's testimony

18   were neither clear and convincing, nor supported by substantial evidence. *Lester v. Chater*, 81

19   F.3d 821, 834 (9th Cir. 1995). Since the lack of objective medical evidence is the only remaining

20   basis for the ALJ's credibility finding, it cannot, on its own constitute substantial evidence to

21   discount Plaintiff's subjective symptom testimony. *Bunnell*, 947 F.2d at 343, 346-47.

22         **II.        Harmless error.**

23

24

1   Identifying an error in the ALJ's decision, however, does not end the Court's inquiry.

2   The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act

3   context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*,

4   *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). An error

5   is harmless "so long as there remains substantial evidence supporting the ALJ's decision and the

6   error does not negate the validity of the ALJ's ultimate conclusion." *Molina*, 674 F.3d *at* 1115

7   (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004).

8   In this case, the ALJ offered three bases for discrediting Plaintiff's testimony. As

9   discussed in Section I, however, these bases did not constitute specific, clear and convincing

10  reasons, supported by substantial evidence, for discrediting Plaintiff. As the ALJ failed to

11  articulate sufficient alternative bases for discounting Plaintiff's testimony concerning the severity

12  of her limitations, the Court cannot say the errors were "inconsequential to the ultimate

13  nondisability determination." *Molina*, 674 F.3d at 1115; *Bray v. Commissioner of Social Sec.*

14  *Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Thus, these are harmful errors requiring remand.

15  **III.     Whether the ALJ properly rejected the opinions of Dr. Barnet, Dr. Johnson, and Dr. Bass.**

16
    Plaintiff argues the ALJ erred in rejecting the opinions of Catherine Bass, Ph.D., an

17  examining psychologist. Dkt. 11, pp. 4-7. An examining physician's opinion is "entitled to

18  greater weight than the opinion of a nonexamining physician."  *Lester* 81 F.3d at 834 (citations

19  omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion

20  of a source who has examined you than to the opinion of a source who has not examined you").

21  "In order to discount the opinion of an examining physician in favor of the opinion of a

22  nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are

23  supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th

24

1  Cir. 1996) (*citing Lester,* 81 F.3d at 831). An ALJ must present specific, legitimate reasons with

2  a "thorough summary of the facts and conflicting clinical evidence used in reaching that

3  decision." *Brawner v. Sec. of Health & Human Svcs.*, 839 F.2d 432, 433 (9th Cir. 1988).

4          The ALJ gave great weight to the opinion of State agency medical consultant, Veena

5  Ghai, M.D., and adopted her opinion and residual functional capacity findings in full. AR 28.

6  The ALJ also considered the opinion of Dr. Bass, who found "the claimant's aggressive

7  tendencies along with potentially paranoid thinking, interpersonal suspiciousness, poor impulse

8  control, and hypomanic activation may result in harmful behavior, both verbally and physically."

9  AR 28, 319. Dr. Bass found the Plaintiff continued to be "seriously mentally ill," and assigned a

10 GAF score of 55. AR 28-29, 319, 321. Nonetheless, the ALJ found Dr. Bass' opinions were

11 accounted for in the residual functional capacity only "to some extent," specifically in the ALJ's

12 finding that the claimant can perform simple tasks with limited social interaction. The ALJ does

13 not discuss what aspects of Dr. Bass' opinion he discounted, nor does the ALJ offer any

14 explanation for partially discrediting Dr. Bass. Though an ALJ may discredit part or all of an

15 examining physician's opinion with specific and legitimate reasons, the ALJ cannot discount an

16 examining physician's opinion without any reasons whatsoever. *See Nguyen*, 100 F.3d at 1466.

17          The Commissioner contends the ALJ did not need to discuss Dr. Bass' opinion further, as

18 the ALJ incorporated Dr. Bass' limitations into the residual functional capacity finding. Dkt. 16,

19 p. 8; *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). However, the Court

20 notes the ALJ failed to discuss significant aspects of Dr. Bass' report bearing on Plaintiff's

21 limitations. For example, the ALJ failed to discuss the results of the Brown ADD Scales

22 administered by Dr. Bass which indicated Plaintiff had clinically significant deficiencies in her

23 ability to organize, prioritize, sustain and shift attention to tasks, sustain effort, and regulate

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 12

1   alertness. AR 26-28, 318-19. These scales also indicated Plaintiff had clinically significant

2   deficiencies with memory. AR 319. Moreover, the ALJ stated he only incorporated Dr. Bass'

3   opinion into the residual functional capacity "to some extent," without explaining what aspects

4   of Dr. Bass' opinion were and were not included in the residual functional capacity analysis. AR

5   28. The ALJ's failure to explain his reasoning frustrates the ability of the Court to provide

6   "meaningful judicial review," and requires a remand for additional findings. *Pinto v. Massanari*,

7   249 F.3d 840, 847 (9th Cir. 2001).

8          The Plaintiff also argues the ALJ erred in evaluating the opinion of Michael Barnett,

9   Ph.D. and Kim Johnson, Ph.D. Because the Court has already found the ALJ erred in evaluating

10   Dr. Bass' opinion, the ALJ should reevaluate the medical opinion evidence, including the

11   opinions of Dr. Barnett, Dr. Johnson, and Dr. Ghai, on remand. *See* 20 C.F.R. §§ 404.1527,

12   416.927.

13          **IV.     Other assignments of error.**

14          In addition to the foregoing, Plaintiff contends the ALJ erred by failing to properly assess

15   Plaintiff's residual functional capacity, and by failing to call a vocational expert to testify. Since

16   the ALJ will necessarily have to re-evaluate these issues on remand, the Court need not address

17   these allegations in this report and recommendation.

18                                **CONCLUSION**

19          Based on the above stated reasons and the relevant record, the undersigned finds the ALJ

20   erred in assessing Plaintiff's credibility concerning her subjective symptoms and limitations and

21   in evaluating the medical evidence, and recommends this matter be REVERSED and

22   REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), to the Acting Commissioner for

23

24

1   further proceedings consistent with this report and recommendation.  The undersigned

2   recommends JUDGMENT be entered for PLAINTIFF and the case closed.

3           Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

5   6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

6   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

7   imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 14,

8   2015, as noted in the caption.

9           Dated this 24th day of July, 2015.

10

11

David W. Christel
United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 14